IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE LTC HOLDINGS, INC., *et al.*, | ) | Chapter 7 |
| | ) | Bankr. Case No. 14-11111 (CSS) |
| Debtors. | ) | Adv. Proc. No. 16-50948 (CSS) |
| | ) | |
| SUPERIOR CONTRACTING GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1987 (MN) |
| | ) | |
| AVINASH N. RACHMALE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

John A. Sensing, R. Stephen McNeill, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Scott A. Frick, THE FRICK LAW FIRM, PLLC, Memphis, TN – Attorneys for Plaintiff

Adam Hiller, HILLER LAW, LLC, Wilmington, DE; Ian M. Williamson, Fatima M. Bolyea, MANTESE HONIGMAN, P.C., Troy, MI – Attorneys for Defendant.

September 24, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is the motion (D.I. 1) ("Motion") of Superior Contracting Group, Inc. ("Superior"), plaintiff in the above-captioned adversary proceeding ("Adversary Proceeding")[1] currently pending in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), seeking an order withdrawing reference of the Adversary Proceeding, pursuant to 28 U.S.C. § 157(d), and transferring venue back to the United States District Court for the Eastern District of Michigan ("Eastern District of Michigan"). For the reasons set forth herein, the Motion is denied without prejudice to Superior's right to request withdrawal of the reference at such time as the proceeding is ready for trial.

## I.     BACKGROUND

### A.     The Parties

The following facts are generally not in dispute. Lakeshore Engineering Services, Inc. ("Lakeshore") was founded by defendant Avinash N. Rachmale ("Rachmale") to provide construction services to municipal, commercial, and government clients. Initially, Rachmale acted as Lakeshore's President, CEO, director, and majority shareholder. (Adv. D.I. 15, Exh. 1, ¶ 42).

In May 2009, Superior and Lakeshore entered into a Mentor/Protégé Agreement for the purpose of pursuing certain U.S. government contracts. (Adv. D.I. 15, Exh.4). Superior and Lakeshore entered into a number of joint venture agreements for projects being constructed by the Army Corps of Engineers through this arrangement. (*Id.*). Under the terms of these joint ventures, Superior was to receive 51% of the ventures' profits and Lakeshore the remainder. (*Id.*).

In 2010, as a result of a merger, Lakeshore became a subsidiary of Lakeshore Toltest Corporation ("LTC"). In 2011, LTC amended and restated its articles of incorporation. (*Id.*, Exh.

---

[1]     The docket of the Adversary Proceeding, *captioned Superior Contracting Group, Inc. v. Rachmale*, Adv. No. 16-50948-CSS (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

2) to include certain indemnification obligations to officers and directors, which Rachmale argues are applicable in this litigation.[2] Post-merger, Rachmale continued in his role as President and CEO of LTC and Lakeshore until at least 2012. (*Id.,* Exh. 1 ¶¶ 37-39). Rachmale was removed from his officer positions in LTC by October 2012. All works on the venture projects and final payment by the Army Corps of Engineers was completed by April 29, 2013. (*Id.,* Exh.4). Rachmale resigned from LTC's board of directors on April 2, 2014. (*Id.,* Exh. 1).

### B. Superior's Litigation Against Lakeshore and Rachmale

On August 23, 2013, Superior filed an action against Lakeshore in the Chancery Court of Tennessee for the Thirteenth Judicial District at Memphis, Shelby County ("the Tennessee Chancery"), asserting claims for contractual breach of the joint venture agreements and seeking accounting for the joint ventures. (*Id.,* Exh 4). In May 2014, Lakeshore, LTC, and other entities (collectively, "the Debtors")[3] filed voluntary petitions for Chapter 7 relief in the Bankruptcy Court. A suggestion of bankruptcy and enforcement of the automatic stay was sent to Superior regarding their case in front of the Tennessee Chancery. (D.I. 15, Exh. 6). The Tennessee Chancery case saw no further action after the notice.

---

[2] According to Rachmale, "The amended articles of incorporation require LTC to indemnify its officers and directors . . . since any alleged liability of Rachmale in this case derives from his actions as a ***director*** of Lakeshore (*Complaint* ¶¶ 6, 7, 8, 9, 11, 13, 14, 16, 17, 20, 21, 34, 35, 36, 37, and 38) (each paragraph alleging that actions by Lakeshore were ***at the direction*** of Rachmale), the indemnity clause requires LTC – who is one of the Debtors, along with Lakeshore, in the consolidated lead bankruptcy case – to indemnify Rachmale for any damages assessed in this case." (D.I. 4 at 4 (citing Exh. 2 (Amended and Restated Articles of Incorporation)).

[3] Debtors include LTC Holdings, Inc., LTCCORP, INC., LTCCORP Government Services, Inc. a/k/a Lakeshore Toltest Corporation, LTCCORP Government Services–MI, Inc. a/k/a Lakeshore Engineering Services, Inc.; Lakeshore Group; LTC Corp Michigan, LTCCORP Government Services–OH, Inc. a/k/a TolTest, Inc.; LTC; LTC Ohio; LTC Corp; LTC Corp Ohio, and LTCCORP E&C Inc.

In August 2014, Superior filed the present federal court proceeding against Rachmale in the United States District Court for the Western District of Tennessee ("Western District of Tennessee"). (*Id.,* Exh. 3). Superior alleged in its complaint claims of conversion, fraud, and intentional misrepresentation. In addition, Superior sought to pierce the corporate veil and hold Rachmale "liable for all obligations owed by Lakeshore to Superior" because of acts committed by Rachmale while controlling Lakeshore. (*Id.*).

The Western District of Tennessee found that the Proceeding satisfied the requirements for federal diversity jurisdiction, but in response to Rachmale's Rule 12(b)(3) motion, determined that venue was more appropriate in the Eastern District of Michigan. (*Id.*, Exh. 6).

The Eastern District of Michigan again reviewed the issue of venue, but this time with regard to whether the proceeding should be transferred to this Court, given the Debtors' bankruptcy filings. The Eastern District of Michigan issued an opinion granting Rachmale's second Rule 12(b)(3) motion to dismiss for improper venue and ordered the proceeding transferred to this Court. The Eastern District of Michigan held that the claims in the proceeding "clearly related to the debtor Lakeshore's bankruptcy proceedings before the District of Delaware." *Superior Contracting Grp., Inc. v. Rachmale*, 2016 WL 1242432, *4 (E.D. Mich. Mar. 30, 2016). The Eastern District of Michigan concluded that Superior's complaint alleged "joint conduct" claims against both Debtor Lakeshore and Rachmale, as well as a plausible indemnification claim by the Defendant against Debtor LTC for his role as officer and director of Debtor Lakeshore. *See id.* at *3. Because of the "joint conduct" claims and possible indemnification, the court granted Rachmale's motion to dismiss, in part, on the basis of improper venue and ordered the case transferred to the District of Delaware. *See id.* at *3-*4. This Court referred the proceeding to the

Bankruptcy Court pursuant to the authority granted by 28 U.S.C. § 157(a) and its standing order of reference. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet).

### C. Adversary Proceeding

In the Bankruptcy Court, Rachmale filed a motion to dismiss (Adv. D.I. 3, 4) ("First Motion to Dismiss"), which the Bankruptcy Court denied (Adv. D.I. 11). Thereafter, the Bankruptcy Court issued a *sua sponte* order requesting the parties' positions on three questions: (1) the proceeding's proper subject matter jurisdiction, (2) the Bankruptcy Court's option to permissively abstain from hearing the Proceeding, and (3) the possible removal of the proceeding to state court. On June 12, 2018, the Bankruptcy Court issued a decision regarding those issues. *Superior Contracting Grp., Inc. v. Rachmale (In re LTC Holdings, Inc.)*, 587 B.R. 25, 35 (Bankr. D. Del. 2018). At the outset of the decision, the Bankruptcy Court states: "To the extent the Court maintains jurisdiction over this Proceeding, venue is proper before the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. §§ 1408 and 1409." *LTC Holdings,* 587 B.R. at 30. Following a detailed and thorough analysis, the Bankruptcy Court determined that the law of the case doctrine counseled against any reconsideration of the determination, previously made by the Eastern District of Michigan in transferring the lawsuit against Rachmale to the Bankruptcy Court, that the Bankruptcy Court could exercise "related to" jurisdiction over the dispute. *Id.* at 35. In its analysis, the Court addressed the issues of *res judicata*, law of the case, and transfer of venue:

> It has been well established that *res judicata* applies to jurisdictional findings when a party . . . has had an opportunity to litigate the question of subject matter jurisdiction [and] attempts to reopen that question in a collateral attack after an adverse judgment. The record demonstrates that the issue of "related to" jurisdiction has already been decided once by the Eastern District of Michigan. However, orders granting a transfer of venue are generally not considered final judgments subject to *res judicata*. Given that the two prior district courts limited

their holding to improper venue and transfer, their actions do not constitute final judgments subject to the collateral order doctrine.

*       *       *

The "law of the case" doctrine nevertheless applies to the Eastern District of Michigan's opinion. As stated by the Supreme Court, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Applying this view, the Third Circuit has defined the law of the case doctrine as a principle that "limits the extent to which an issue will be reconsidered once the court has made a ruling on it."

Law of the case proves particularly important in assessing transfer decisions. In the words of the Supreme Court, a transferee that chooses to disregard a prior transfer decision risks "send[ing] litigants into a vicious circle of litigation." Allowing such results would "undermine public confidence in our judiciary, squander private and public resources, and commit far too much of [the Supreme Court's] calendar to the resolution of fact-specific jurisdictional disputes." For this reason, transfer decisions are rarely to be reassessed, as long as "the transferee court can find the transfer decision *plausible*, its jurisdictional inquiry is at an end." Applying that principle to an adversary proceeding with two prior transfer decisions, Judge Shannon in *Semcrude* ruled that the law of the case counseled against further action by the bankruptcy court. "The transfer decisions of other courts should be respected insofar as jurisdiction plausibly lies in this Court."

*       *       *

The Eastern District of Michigan held that the claims in this Proceeding "clearly related to the debtor Lakeshore's bankruptcy proceedings before the District of Delaware." The court concluded that Superior's complaint alleged "joint conduct" claims against both Debtor Lakeshore and Rachmale, as well as a possible indemnification claim by the Defendant against Debtor LTC for his role as officer and director of Debtor Lakeshore. Because of the "joint conduct" claims and possible indemnification, the court granted Defendant's motion to dismiss, in part, on the basis of improper venue and ordered the case transferred to the District of Delaware.

*       *       *

[A]s the analysis *infra* describes, the Proceeding has non-core, "related to" jurisdiction under *Pacor* and its progeny because of both LTC's contractual indemnification of Rachmale and Superior's claim to pierce the corporate veil against Rachmale because of derivative conduct of Debtor Lakeshore.

*       *       *

> Before this Court, then, is a situation closely parallel to that of *Semcrude*. The issue of "related to" jurisdiction has already been properly briefed and decided upon by a federal court. In the process, the Proceeding has been twice transferred. Critically, "related to" jurisdiction more than plausibly exists for this Proceeding under Third Circuit law. As set out by the Supreme Court in *Christianson*, this plausible jurisdictional hook counsels the Court to honor the prior decision of the Eastern District of Michigan. The law of the case doctrine counsels this Court to not issue a different jurisdictional finding under the Order.

*LTC Holdings*, 587 B.R. at 33-35 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) and *In re Semcrude, L.P.*, 442 B.R. 258, 277 (Bankr. D. Del. 2010)) (internal footnotes omitted). Based on a thorough analysis, the Bankruptcy Court went on to confirm that the Court's "related to" jurisdiction over the proceeding was satisfied based on both the indemnification provision's coverage and Superior's attempt to pierce the corporate veil. *Id.* at 40. The Bankruptcy Court further determined not to permissively abstain from hearing the matter and that remand to a state court was unavailable. (*See id.* at 41-43).

As of November 29, 2018, briefing was completed on a renewed Motion to Dismiss filed by Rachmale (Adv. D.I. 24, 25) ("Second Motion to Dismiss"), which remains *sub judice*. (*See* Adv. D.I. 33). On December 13, 2018, Superior filed the Motion seeking withdrawal of the reference and transfer of venue back to the Eastern District of Michigan. The docket of the Adversary Proceeding reflects no discovery or other recent activity and no scheduling order is in place. Briefing on the Motion is complete. (*See* D.I. 1, 4, 6). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.    JURISDICTION AND STANDARDS OF REVIEW

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to the authority granted by 28 U.S.C. § 157(a), this Court refers cases arising under title 11 to the

United States Bankruptcy Court for the District of Delaware. *See* Am. Standing Order of Reference, Feb. 29, 2012 (C.J. Sleet). "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). With respect to such permissive withdrawal, "[t]he 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) (internal quotations omitted). To overcome that presumption, the moving party has the burden to prove that cause exists to withdraw the reference. *See In re NDEP Corp.*, 203 B.R. 905, 907 (D. Del. 1996).

As noted by the Third Circuit, "cause" to withdraw the reference "will be present in only a narrow set of circumstances." *In re Pruitt*, 910 F.2d 1160, 1171 (3d Cir. 1990) (internal quotation marks and citations omitted). Although the statute does not define "cause shown," the Third Circuit has set forth five factors that should be considered in determining whether cause exists to withdraw the reference: (1) promoting uniformity in bankruptcy administration, (2) reducing forum shopping and confusion, (3) fostering the economical use of the debtors' and creditors' resources, (4) expediting the bankruptcy process, and (5) the timing of the request for withdrawal. *See Pruitt*, 910 F.2d at 1168 (discussing non-exhaustive list of factors).

## III.   PARTIES' CONTENTIONS

Superior contends that cause exists to withdraw the reference and transfer the proceeding because the claims asserted in the Adversary Proceeding are all non-core tort claims arising under state law. Superior argues that it has consistently demanded a jury to try all issues associated with these claims, has never invoked the jurisdiction of the Bankruptcy Court, has not submitted a proof

of claim against any of the Lakeshore entities, and has never claimed that any of its causes of action involve any of the Lakeshore entities. According to Superior, the only possible connection that the Adversary Proceeding has to the bankruptcy is Rachmale's alleged contingent claim for indemnification against one or more of the Lakeshore entities. Additionally, Superior contends there are no witnesses located within this district, and any nonparty fact witnesses are beyond the subpoena power of the Bankruptcy Court. Because the Bankruptcy Court has resolved threshold jurisdictional issues, Superior submits that it is appropriate at this time for the reference to be withdrawn, and the matter transferred back to the Eastern District of Michigan where Rachmale resides and witnesses can be subpoenaed to appear for trial. (*See* D.I. 1 -1 at 7-14).

Conversely, Rachmale argues that Superior has failed to meet its burden of demonstrating cause, and the Motion should be denied. According to Rachmale, the fact that the claims are non-core and that Superior has demanded a jury trial are insufficient to establish cause. With respect to venue, Rachmale contends that two courts have now determined that venue in this district is appropriate, that Superior's request represents a third "bite at the apple," raises issues of forum shopping, and should therefore be denied. (*See* D.I. 4 at 7-20).

IV. <u>ANALYSIS</u>

A. **Considerations of Judicial Economy**

Superior's primary argument is that the Adversary Proceeding is non-core and may require a jury trial, thus withdrawing the reference will serve judicial economy.[4] (*See* D.I. 1-1 at 3, 10-11 ("Principles of judicial economy weigh heavily in favor of withdrawal of the reference" as "the

---

[4]    While also addressing the *Pruitt* factors, Superior argues that permissive withdrawal for "cause" should include considerations of judicial economy and the nature of the proceedings (core or non-core), and *Superior* focuses its briefing on those factors. (*See* D.I. 1-1 at 10 (citing *Hatzel & Buelher Inc. v. Orange & Rockland Utilities*, 107 B.R. 34, 39 (D. Del. 1989)).

Bankruptcy Court is not authorized to enter a final judgment in the matter . . ., thereby creating the need for a two-tiered review.')). This argument is commonly raised before the Court at the outset of an adversary proceeding and must be rejected here.

With respect to the nature of its claims, although Superior argues that permissive withdrawal is warranted because its clams are non-core, "[t]he mere fact the Complaint asserts non-core claims does not mandate withdrawal." *In re AgFeed USA, LLC*, 565 B.R. 556, 564 (D. Del. 2016). "Proceedings should not be withdrawn for the sole reason that they are non-core." *Hatzel & Buehler*, 106 B.R. at 371. Indeed, "[t]he 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Id.* (citing *Schubert v. Lucent Techs., Inc.*, 2004 U.S. Dist. LEXIS 25169, at *6 (D. Del. Nov. 16, 2004)). "This observation makes sense in light of the fact that one of the functions of section 157(d) is to insulate the grant of jurisdiction to the bankruptcy courts from successful constitutional attack." *Id.* Here, Superior has failed to demonstrate any "contravening policy" which rebuts the presumption created by section 157(d) that this non-core proceeding – which the Bankruptcy Court has found to be a "related to" proceeding – should be adjudicated in bankruptcy court.

"In non-core proceedings, the bankruptcy court is given the power to submit proposed findings of fact and conclusions of law to the district court." *AgFeed,* 565 B.R. at 564 (citing 28 U.S.C. § 157(c)(1)). Indeed, "[p]ermitting the Bankruptcy Court to oversee pretrial matters . . ., and withdrawing it only when it is ripe for a jury trial, promotes judicial economy and a timely resolution of this case." *Id.* at 566. Courts have recognized the potential drawbacks to this so-called "two-tiered court review," but have not found such concerns substantial enough to warrant withdrawal: "Should the matter indeed proceed to trial, the Court recognizes that this resolution

will have drawbacks.  The Bankruptcy Court will not be able to enter a final judgment as to the non-core claims and must issue proposed findings of fact and conclusions of law." *Id.* (citing 28 U.S.C. § 157(c)).  As the Court has previously observed, however, "the complex framework of bankruptcy jurisdiction and the accompanying constitutional limitations may make such a result unavoidable." *Id.* (citing *SNMP Research Int'l, Inc. v. Nortel Networks International, Inc. (In re Nortel Networks, Inc.)*, 539 B.R. 704, 712 (D. Del. 2015)).

**B.     Request for Jury Trial**

Superior contends that its right to a jury trial, which the Bankruptcy Court cannot conduct, and its unwillingness to consent to the Bankruptcy Court's adjudication of the issues, also weighs heavily in favor of withdrawing the reference.  (D.I. 1-1 at 3-4).  According to Rachmale, this is insufficient to carry Superior's burden.  Rachmale argues that, although Superior may be entitled to a jury trial, its potential entitlement at some future date is not sufficient grounds to withdraw the reference at this time.  "Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'" *In re Big V Holding Corp.*, 2002 WL 1482392, at *5 (D. Del. July 11, 2002) (citing *In re Northwestern Institute of Psychiatry, Inc.*, 268 B.R. 79, 84 (E.D. Pa. 2001) and *Barlow & Peek, Inc. v. Manke Truck Lines, Inc.*, 163 B.R. 177, 179 (D. Nev. 1993) (refusing to withdraw reference until "it is clear that a jury trial will be necessary and that the case is prepared and ready for such trial to commence")).  Rachmale believes that his pending Second Motion to Dismiss – or subsequent proceedings – will result in this case concluding prior to trial, and asserts that even if the case does proceed to jury trial, the Bankruptcy Court has "presided over this case for almost [three years], is already familiar with Superior's claims, and thus is best equipped to handle discovery and other pretrial matters."  (D.I. 4 at 3-4).

Although assertion of a right to jury trial coupled with refusal to consent to such trial before the bankruptcy court is not "itself sufficient cause for discretionary withdrawal," it is one of the factors the Court considers. *See Official Comm. of Unsecured Creditors v. Fed. Indus. Prods.*, 2007 WL 211179 at *2 (D. Del. Jan. 26, 2007). "Withdrawal of the reference . . . depends on particular circumstances of each case, including whether the case is likely to reach trial" but generally "such a right [to jury trial] does not compel withdrawing the reference until the case is ready to proceed to trial." *Schneider v. Riddick (In re Formica Corp.),* 305 B.R. 147, 150 (S.D.N.Y. 2004); *Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores)*, 190 B.R. 157, 162 (S.D.N.Y. 1995). In deciding whether to withdraw a case from the bankruptcy court based on a jury demand, courts consider (1) whether the case is likely to reach trial; (2) whether protracted discovery with court oversight will be required; and (3) whether the bankruptcy court is familiar with the issues presented. *In re Enron Corp.*, 317 B.R. 232, 235 (S.D.N.Y. 2004).

Although the Adversary Proceeding has been pending in the Bankruptcy Court since 2016, the case remains in the early stages of litigation. There is no scheduling order in place and discovery has yet to begin. Rachmale argues that discovery is "likely to be lengthy and detailed," but cites nothing to support this contention. On the other hand, Superior argues that the pending Second Motion to Dismiss (or any summary judgment motion) is unlikely to prevent the matter from proceeding to trial, as it is identical to Rachmale's First Motion to Dismiss, which the Bankruptcy Court has already denied. Thus, "[t]here is no plausible reason to expect the Bankruptcy Court to grant a Motion that it had previously denied." (D.I 6 at 6).

Although the record supports Superior's contention, the Court concludes that it would still be "premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future." *Big V,* 2002 WL 1482392, at *5. "Even

when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not preside over an adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." *General Elec. Capital Corp. v. Teo,* 2001 WL 1715777, at *4 (D. N.J. Dec. 14, 2001) (citation omitted). Where, as here, a case is in the early stages with unresolved pre-trial matters, including discovery, "one can only speculate when it will proceed to trial, if at all." *Enron,* 317 B.R. at 235. If the Adversary Proceeding does proceed to trial, the Court agrees that the Bankruptcy Court is well-equipped to handle all pretrial issues, as it is already familiar with the facts of both the Adversary Proceeding and the Chapter 7 cases, and can adjudicate any discovery disputes and pretrial motions. In rendering its thorough Decision, the Bankruptcy Court has already engaged in an in-depth review of the jurisdictional issues, familiarized itself with the specific factual details of this action, and remains best suited to handle all matters prior to trial, including discovery.

As such, judicial economy favors denial of the Motion, and Superior's request for a jury trial does not alter this conclusion.

## C.     *Pruitt* Factors

Consideration of the *Pruitt* factors also does not support withdrawal of the reference at this time. With respect to promoting uniformity in bankruptcy administration, Superior argues that the Bankruptcy Court's retention of this claim will have no effect, because the Adversary Proceeding requires resolution of state law claims. *See In re Visteon Corp.*, 2011 WL 1791302, at *4 (D. Del. May 9, 2011) (holding that "the [b]ankruptcy [c]ourt's retention of this claim would not promote uniformity of bankruptcy administration because the claim will require resolution of issues of Missouri tort law"). According to Superior, all of its claims are premised on Michigan and/or Tennessee tort law, and thus uniformity of bankruptcy administration is not promoted by requiring

resolution in the Bankruptcy Court rather than in the Eastern District of Michigan. The Bankruptcy Court, however, has ruled that the indemnification and piercing the veil claims are related to the Chapter 7 cases, and this supports retention by the Bankruptcy Court.

With respect to reducing forum shopping and confusion, Superior argues there is no concern that forum shopping and confusion would be encouraged by withdrawal. (D.I. 1-1 at 13). Superior argues that, at the time the acts giving rise to the claims asserted in this Adversary Proceeding arose, Superior had no reason to believe that these claims would be litigated in a bankruptcy court. Noting that the proceedings were initiated in the Western District of Tennessee, and then transferred to the Eastern District of Michigan at Rachmale's request, Superior argues that they never could have been initiated in this district absent the bankruptcy; thus, *not* withdrawing the reference actually could result in this Court *promoting* forum shopping by giving Rachmale the opportunity to have the dispute litigated far away from his domicile in the Eastern District of Michigan, where his activities of have been scrutinized by the media. The Court disagrees. The Eastern District of Michigan and the Bankruptcy Court have already issued orders holding that venue is proper in Delaware. While the Court agrees with Superior that the convenience of the parties and witnesses was not raised or ruled upon by either court, it is unclear why this issue was not raised before. (*See* D.I. 6 at 7-8). Reviewing the Eastern District of Michigan's ruling on Rachmale's motion to dismiss for improper venue, in which "Rachmale asserted that the proper venue for this action is the District Court where the bankruptcy action is pending," *i.e.,* the District of Delaware, "Superior Contracting responds that the Bankruptcy Court in Delaware has simply no jurisdiction over this case since Rachmale, himself, is not the subject of the bankruptcy proceeding in that court." *Superior*, 2016 WL 1242432, * 2. Where Superior failed to raise the issue of the convenience of the parties and witnesses, and where two courts have

already ruled that venue in this district is proper, denying withdrawal of the reference and transfer of venue will, in this case, reduce confusion.

Superior contends that fostering the economical use of debtors' and creditors' resources, is not an issue in this case and that Rachmale has failed to cite even one example of how resources of either side could be expended in litigation in which none of the Debtors are parties and the sole defendant is a third-party, non-debtor. The Court agrees with Superior that this factor does not weigh strongly against withdrawal, as the resources of the Debtors are not implicated apart from any litigation concerning the indemnification issue. The parties' resources, however, are likely better served by the Bankruptcy Court's retention of the Adversary Proceeding based on its familiarity with the underlying facts and issues. Duplicating those efforts at an early stage of the case may result in unnecessary expenses for the parties. *See In re Circle of Yoakum, Tex.*, 2006 WL 2347710, at *2 (D. Del. June 23, 2006) (finding that economy favored Bankruptcy Court resolving pretrial proceedings because of its familiarity with facts of case). The same reasoning applies with respect to the fourth factor, expediting the bankruptcy process, although given the limited issues involving the Debtors, this factor is also somewhat neutral.

Finally, with respect to the fifth factor, timing of the request for withdrawal, Congress has mandated that a party seeking to withdraw a proceeding from a bankruptcy court to a district court can do so only upon the filing of a "timely" motion. 28 U.S.C. § 157(d). Section 157, however, does not define what the court should consider timely. *See id.*; *see also In re Allegheny Health Educ. and Research Foundation*, 2006 WL 3843572, *2 (W.D. Pa. Dec. 19, 2006). "A § 157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995). Timeliness is "measured by the stage of the proceedings in the

Bankruptcy Court." *In re U.S.A. Floral Products, Inc.*, 2005 WL 3657096, at *1 (D. Del. July 1, 2005) (internal quotation marks omitted). "The purpose of the timeliness provision is to prevent unnecessary delay and stalling tactics." *Schlein*, 188 B.R. at 15. As the case is in its early stages of litigation and no discovery has been taken, Superior's Motion was timely made, and this factor does not weigh against permissive withdrawal.

Based on a consideration of the above factors, the Court does not find cause to grant Superior's Motion at this time. The arguments presented by Superior present no contravening policy to rebut the presumption that permitting the Bankruptcy Court to oversee pretrial matters in this proceeding, and withdrawing the reference only when it is ready for a trial, will promotes judicial economy and a timely resolution of this case. Additionally, the Court declines to transfer the proceeding back to the Eastern District of Michigan in light of the prior rulings.

## V.    <u>CONCLUSION</u>

For the reasons explained above, the Court will deny the Motion without prejudice to Superior's right to move for withdrawal of the reference at such time as it is ready for trial. A separate Order will be entered.